E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-2979
     E-mail:   frances.lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 23-CR-148-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT NISHITH THARAKA VANDEBONA |
| v. | |
| NISHITH THARAKA VANDEBONA, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Frances S. Lewis, hereby files its sentencing position for defendant NISHITH THARAKA VANDEBONA.

This sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report dated September 5, 2023 (dkt. 40), the attached declaration of AUSA Frances S. Lewis and exhibits thereto, including victim impact statements, any additional statements by victims who appear at the sentencing

hearing in this case, the files and records in this case, and such further evidence and argument as the Court may permit.

As set forth herein, the government currently anticipates that at least two victims wish to exercise their rights under the Crime Victim Rights Act to speak at the upcoming sentencing hearing on November 27, 2023. The government will inform the Court in advance of the hearing if any additional victims wish to speak.

Dated: November 13, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

            /s/ Frances S. Lewis
FRANCES S. LEWIS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**

I.   INTRODUCTION...................................................1

II.  FACTUAL BACKGROUND.............................................2

     A.   Defendant's Threatening Calls to CAPS and Planned
          Parenthood................................................2

     B.   Impact on Victims.........................................5

III. GUIDELINES CALCULATION.........................................8

     A.   Count Three (18 U.S.C. § 248).............................8

          1.   Base Offense Level: Threats..........................8

          2.   Enhancement for More than Two Threats................9

     B.   Count Four (18 U.S.C. § 875(c)(1))........................9

     C.   Multiple Count Adjustment................................10

     D.   Final Guidelines Range...................................11

IV.  A CUSTODIAL SENTENCE OF 15 MONTHS IS APPROPRIATE..............11

     A.   Nature and Circumstances of the Offense..................11

     B.   History and Characteristics of Defendant.................13

     C.   Need for Deterrence and to Promote Respect for the Law...14

V.   CONCLUSION....................................................15

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

In 2022, defendant Nishith Tharaka Vandebona ("defendant") made a series of threatening phone calls to several nonprofit organizations in California.  These included calls to two Planned Parenthood clinics the weekend that the Dobbs decision was announced, in which he said, in part, "I'm going to come in there and kill you.  You understand?  You're gonna harm innocent people?  The children are innocent.  You're going to get fucking killed bitch, you understand that?  That includes your staff too. . . . Fucking whore."  (Dkt. 32, Plea Agreement ¶ 13.)

Based on this conduct, defendant pleaded guilty to one count of threatened forcible intimidation regarding the obtaining and provision of reproductive health services, in violation of 18 U.S.C. § 248(a)(1), and one count of transmitting threatening communications in interstate commerce, in violation of 18 U.S.C. § 875(c).  The Presentence Investigation Report ("PSR") calculated a Sentencing Guidelines total offense level of 19 and a criminal history category of I, with a resulting sentencing range of 30 to 37 months.  For the reasons set forth below, the government calculates a Sentencing Guidelines total offense level of 13 and a criminal history category of I, with a resulting sentencing range of 12 to 18 months.

The United States recommends that the Court impose a sentence of 15 months' custody to be followed by three years of supervised release, including special conditions that will require him to stay away from the organizations he targeted.

## II.  FACTUAL BACKGROUND

### A.  Defendant's Threatening Calls to CAPS and Planned Parenthood

In 2022, defendant made threatening calls to Californians for Population Stabilization ("CAPS") and two healthcare clinics affiliated with Planned Parenthood: (1) Planned Parenthood of Central Coast California ("Planned Parenthood Central Coast"); and (2) Planned Parenthood of Los Angeles ("Planned Parenthood LA," collectively, "Planned Parenthood").  (Plea Agreement ¶ 13.)  Before making these calls, defendant used the Internet to create anonymous phone numbers that would make it difficult to trace his identity.  (Id.)  He then called CAPS and Planned Parenthood using these anonymous phone numbers and repeatedly made threats to kill employees and others.  (Id.)

On February 21 and 22, 2022, defendant anonymously left three threatening voicemails with CAPS, stating in the first voicemail, in part:[1]

1. "I'm gonna come in there, plant a bomb, and kill as many white Americans as possible.  You understand that?  Servicemen, families, everybody."

2. "You are gonna see innocent people killed in your town, okay?"

3. "I'm gonna come in that motherfucker and kill all of you."

(Id.)  In the second voicemail that he left for the same CAPS employee, he said, "You're gonna all find out what Brown Power is

---

[1] As part of his plea agreement, defendant admitted the key statements from each of the six calls that he made to CAPS and Planned Parenthood.  Complete transcripts for all six calls are attached as Exhibit 4 to the Declaration of Frances S. Lewis ("Lewis Decl.") filed concurrently herewith.

about. We're gonna bring in as many people as we can and then we're gonna procreate with your women and make our people big, too. We're gonna take this country over from you. You understand that, you fucking cracker? Brown power." (Id.) That same day, defendant called the same CAPS employee again and left a third voicemail with the following statements: "I'm gonna come in there and kill all of you dude. Be careful." (Id.)

As defendant later admitted, he made all of these statements to CAPS intending to issue a threat and with the knowledge that his words would be perceived as a threat. (Id.)

Defendant's threatening communications did not end with CAPS. (Id.) On June 24, 2022, the United States Supreme Court released its decision in Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022), which overturned Roe v. Wade, and held that the United States Constitution does not confer a right to abortion. (Plea Agreement ¶ 13.) The decision was well publicized, including within the Central District of California. (Id.)

On June 24 and 25, 2022, defendant used Pinger to again create anonymous phone numbers. (Id.) On both dates, defendant called two separate Planned Parenthood locations and threatened to shoot, kill, and murder their staff. (Id.) Defendant admitted that he threatened the staff and employees of Planned Parenthood because they had been providing services related to the termination of pregnancies, and he wanted to intimidate Planned Parenthood from providing such services. (Id.)

Specifically, on June 24, 2022, defendant left a voicemail for a Planned Parenthood CC employee containing the following threats, among others: "Fucking bitch-ass whore. I'm going to come in there

3

and kill you. You understand? You're going around harming innocent people? Those children are innocent. You're going to get fucking killed bitch, you understand that right? Includes your staff too. You're the boss or what? Go feed a dick. Fucking whore." (Id.)

On June 25, 2022, defendant then called and spoke to a live Planned Parenthood LA call center specialist and made the following threats, among others: "I'm calling to let you know that I'm going to come in there and kill all of you, including your staff and your security. You got it? You're overdue for an attack." (Id.) That same day, he again called the Planned Parenthood LA call center and spoke to a different specialist and made the following statements, among others:

1. "I'm calling to let you know that you're gonna have a tragedy at the Santa Monica location here soon. I'm gonna come in there and kill your staff and your security."

2. "You guys aren't safe, understand that? You might want to call and let them know, and the police won't save you either."

3. "I'm gonna come in there and murder your staff."

4. "You're gonna get shot and killed. Do you understand that?"

(Id.)

Defendant has admitted that he through these calls he threatened Planned Parenthood with violence intending to intimidate the staff and employees of Planned Parenthood. (Id.) He has also admitted that his words had their intended effect, as the victims were placed in reasonable apprehension of bodily harm to themselves and others. (Id.) And regardless of whether defendant had any actual plans to follow through with his words, there is evidence that defendant at

4

least had the means to carry out these threats. Before his arrest, defendant had six firearms registered in his name, including multiple handguns and shotguns. (PSR ¶ 104.) Defendant acquired the sixth firearm -- a Remington Arms, model 870, 12-gauge pump-action shotgun -- just one week before his threats to Planned Parenthood. (Id.)

In March 2023, a federal grand jury returned an indictment charging defendant with five counts: three violations of 18 U.S.C. § 248(a) for threatened forcible intimidation regarding the obtaining and provision of reproductive health services (counts one, two and three), and two violations of 18 U.S.C. § 875(c) for transmitting threatening communications in interstate commerce (counts four and five). (Dkt. 1.)

**B.   Impact on Victims**

Defendant's conduct instilled genuine fear in his victims. (PSR ¶¶ 27-29.) Defendant called the main number for CAPS, but because the organization was small, the calls were forwarded to a specific cell phone for one employee (the "CAPS Employee")[2] (Lewis Decl., Ex. 5.) When the CAPS Employee was interviewed by the FBI, the CAPS Employee described feeling immediately "threaten[ed], sick, and sca[r]ed." (Id.) The CAPS Employee shared the voicemails with the organization, which "immediately went into crisis mode" and contacted law enforcement. (Id.) The CAPS Employee removed her picture and name from the organization's website and stopped going into work for a few weeks "because the threats stated that [the caller] would blow

---

[2] The CAPS Employee is still considering whether to provide a written impact statement in advance of sentencing or to appear at sentencing itself. If or when the CAPS Employee provides a statement, the government will supplement this filing.

5

up her office." (Id.) The CAPS Employee genuinely feared the caller "was actually going to follow through with the threats." (Id.)

The CEO of Planned Parenthood LA, S.D., has also provided a victim impact statement on behalf of her organization. (Lewis Decl., Ex. 1.)[3] She explained that the day defendant called her organization was "not a typical day" because it was the day after the Supreme Court overturned Roe v. Wade, and their call centers were "especially busy." (Id.) Despite being trained on how to manage suspicious and threatening phone calls, she wrote "nothing can prepare you for being told that you and your colleagues are about to be killed." (Id.) She wrote: "I am haunted by [defendant's] calls to this day -- the tone of his voice, his calm delivery, and his direction of a racial slur towards our staff." (Id.) For months she and her organization were left wondering "who had made the calls and what he might be capable of doing." (Id.) Of the two women who had to answer defendant's calls and calmy respond to his threats, one quit her job a few weeks after the incident and the other has asked not to be engaged in conversation about the incident. "She finds it all too stressful. She fears for her safety and worries that [defendant] will know who she is or where she lives." (Id.)

The CEO of Planned Parenthood CC, J.T.,[4] shared a similar response in her victim impact statement. (Lewis Decl., Ex. 2.) J.T. wrote that while her organization has also had past safety and security incidents, "none of this inoculate[d] us, however, from the trauma and terror inflicted upon us when we received the voicemail

---

[3] Victim S.D. intends to attend the upcoming sentencing hearing and wishes to speak on behalf of her organization.

[4] Victim J.T. also intends to attend the upcoming sentencing hearing and wishes to speak on behalf of her organization.

6

left by [the defendant]." (Id.)  She described the voicemail as "violent, unusual, and deeply traumatizing for our staff person.  The staff person who received the voicemail received it late at night.  It specifically referenced her name.  She was terrified that she was being personally targeted." (Id.)  The staff member shared the message with the organization, and J.T. described how her management teem was "unsure whether the voicemail would materialize into a violent incident.  It was deeply unnerving to consider how someone could attempt to harm our staff team."  Later learning that he had recently purchased a firearm a week "before threatening to kill everyone who works at my organization was chilling." (Id.)

The COO of Planned Parenthood CC, Y.R., also described learning about defendant's voicemail and how she "was terrified." (Lewis Decl., Ex. 3.)  "It was violent, and the threat felt immediately real." (Id.)  When she spoke to the employee who received the voicemail, "[h]er voice cracked, and she expressed feeling scared because the defendant stated her name in the voicemail." (Id.)  Y.R. immediately contacted law enforcement and asked for additional patrols. (Id.)  She remained worried for her employees, left "wondering if this would lead to some catastrophic event," and was not able to get any other work done that day. (Id.)  In her concluding words:

> The defendant does not deserve any mercy.  He terrorized my colleagues and me.  He reinforced our fears of being constant targets.  He is the reason why Planned Parenthoods are forced to invest thousands of dollars and time to security measure improvements.  He is the reason why my colleagues and I have to be mindful of where we park, or look over our shoulder when we arrive and leave work.  He is the reason why our families fear for our safety and periodically ask us to reconsider our careers.  Nishith Tharaka Vandebona must be held accountable and should never

7

      again be allowed to come near a Planned Parenthood or contact its employees.

(Id.)

**III. GUIDELINES CALCULATION**

    **A.   Count Three (18 U.S.C. § 248)**

The parties have no agreement as to the Guidelines calculation for count three. (Plea Agreement ¶ 15.) The United States calculates the Guidelines for count two as follows, which is the same as in the PSR (PSR ¶¶ 38-48):

| Base Offense Level | 12 | USSG §§ 2H1.1, 2A6.1 |
|---|---|---|
| More than Two Threats | +2 | USSG § 2A6.1(b)(2)(A) |
| **Ct. 3 Total Offense Level** | **14** | |

      1.   <u>Base Offense Level: Threats</u>

The base offense level for a violation of 18 U.S.C. § 248(a)(1) is set forth in USSG § 2H1.1(a). Here, because defendant's underlying conduct in count three amounts to a criminal threat under the state and federal definitions of a threat, then under § 2H1.1(a)(1), the base offense level is 12 under USSG § 2A6.1 with an additional two-level enhancement for multiple threats under § 2A2.2(b)(2). <u>See</u> USSG 2H1.1(a), App. N. 1 (defining the imported offense level as including the base offense level and specific offense characteristics from the Chapter Two Guidelines).

The applicable "underlying offense" need not have been charged and can include "any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law." <u>Id.</u>; <u>see also</u> <u>United States v. McInnis</u>, 976 F.2d 1226, 1233 (9th Cir. 1992) ("[C]onsideration of a defendant's underlying offense [under § 2H1.1] does not require that the defendant actually have been

8

1 convicted of or charged with any other crime.  Rather, the sentencing
2 court is to determine the offense level of the offense most
3 comparable to the defendant's conduct.").

Here, defendant has admitted that his calls to Planned Parenthood were "threats."  (Plea Agreement ¶ 13.)  He has also specifically admitted that his threats to Planned Parenthood communicated an indication of an intention to inflict great bodily on the recipient because in his calls he "threatened to shoot, kill, and murder their staff."  (Id.)  He further admitted that he "threatened the use of force" in order to "intimidate" Planned Parenthood staff from providing services related to the termination of pregnancies, i.e., abortions.  (Id.)  These words would therefore qualify as criminal threats under state or federal law.  See, e.g., 18 U.S.C. § 875(c); Cal. Penal Code § 422.

### 2. Enhancement for More than Two Threats

Under § 2A6.1(b)(2)(A), a two-level enhancement applies if defendant's offense involved more than two threats.  Here, considering just his conduct with respect to Planned Parenthood, defendant has admitted that he made at least three threatening communications. (Plea Agreement ¶ 13.)  Therefore, this enhancement applies, and the total offense level for defendant's conduct with respect to count three is 14.  (PSR ¶¶ 41-44.)

**B.   Count Four (18 U.S.C. § 875(c)(1))**

As set forth in the Plea Agreement (¶ 15), the parties have agreed only to a base offense level with respect to count four. Additionally, both parties are free to seek any other specific offense characteristics, adjustments, or departures.  (Id.)  The

9

United States calculates the Guidelines on count four as follows, which differs slightly from the PSR (PSR ¶¶ 49-60):

| Base Offense Level | 12 | USSG § 2A6.1 |
|---|---|---|
| More than Two Threats | +2 | USSG § 2A6.1(b)(2)(A) |
| **Ct. 4 Total Offense Level** | **14** | |

The explanation for the application of the base offense level for threats and enhancement for more than two threats is the same as above, because with respect to the victim of count four, defendant again left more than two threatening communications.

Under the facts of this case, the government is not seeking the application of the four-level enhancement for substantial disruption in a business's function or services under USSG § 2A6.1(b)(4) (PSR ¶¶ 55-56), or the three-level enhancement for targeting a victim because of their actual or perceived race under USSG § 3A1.1(a) (PSR ¶¶ 57-60).[5] The government, however, does not waive any arguments that could be made with respect to the application of those enhancements should the Court agree with the USPO that they apply.

### C. Multiple Count Adjustment

The offenses in count three and count four do not group because the act of threatening Planned Parenthood in June 2022 is distinct from the threats made against CAPS in February 2022, and neither is a specific offense characteristic of the other. (PSR ¶¶ 66-67; USSG § 3D1.2.) With a total offense level of 14 for each count three and

---

[5] The government does not agree that there are any constitutional infirmities with applying the hate crime enhancement to violations of 18 U.S.C. § 875(c), and is only declining to seek its application given the specific evidence of defendant's motivations in this case.

10

count four, there are thus two equally serious units, resulting in an additional two-level enhancement. USSG § 3D1.4. This brings defendant's total offense level to 16.

### D. Final Guidelines Range

After applying a two-point downward adjustment for acceptance of responsibility under § 3E1.1(a) and a one-point downward adjustment for timely acceptance under § 3E1.1(b), defendant's resulting total offense level is 13. The defendant has one criminal history point and therefore falls within criminal history category I. (PSR ¶ 79.) Defendant's Guidelines range is therefore 12 to 18 months. Pursuant to paragraph 20 of defendant's plea agreement, defendant has waived his right to appeal his sentence provided the Court imposes a sentence no longer than 16 months.

## IV. A CUSTODIAL SENTENCE OF 15 MONTHS IS APPROPRIATE

A mid-range 15-month custodial sentence appropriately balances the mitigating and aggravating factors under 18 U.S.C. § 3553(a) in this case. The seriousness of the offense, the specific history and characteristics of this defendant, the need for just punishment, the need for specific and general deterrence, and the need to protect the community all support the requested custodial sentence of 15 months.

### A. Nature and Circumstances of the Offense

The aggravating factors in this case necessitate the imposition of a custodial sentence, which here is 15 months. Defendant has admitted that he made multiple threatening communications to two separate organizations throughout 2022. (Plea Agreement ¶ 13.) He also admitted that he used an Internet application to anonymize his identity when making these phone calls (id.), which allowed him to

11

continue to make threats in June 2022 after his calls in February 2022 went unsolved and unpunished.

Defendant's threats were specific and terrifying to the victims. In his calls to CAPS, he used phrases like, "I'm gonna come in there, plant a bomb, and kill as many white Americans as possible" and "I'm gonna come in that motherfucker and kill all of you." (Id.) These calls were to the main number for CAPS, but because CAPS is a small organization, they were being forwarded to the specific cell phone of an individual employee. (Lewis Decl., Ex. 4.) The calls caused the CAPS Employee not to come into work for several weeks and to fear for both her own safety and the safety of the other employees of CAPS. (Id.)

Defendant has further admitted that he threatened the use of force against Planned Parenthood in order to intimidate the staff and employees of Planned Parenthood from providing services relating to the termination of pregnancies, i.e., abortions. (Plea Agreement ¶ 13.) He also admitted that his calls directly and proximately harmed the women who received the communications as well as other staff and employees at Planned Parenthood CC and Planned Parenthood LA who heard about them and placed the victims in reasonable apprehension of bodily harm to themselves and to others. (Id.) His calls to Planned Parenthood were similarly terrifying for those who received them. The leaders of both Planned Parenthood organizations and the specific employees who received the calls described how real and specific these threats were compared to other security concerns they have had in the past. (Lewis Decl., Ex. 1-3 (Victim Impact Statements); Ex. 6-10 (FBI Reports from Additional Planned Parenthood Employees.)

Defendant did not physically injure anyone, but his threatening conduct terrorized his victims and left a last impression on them mentally and emotionally.  (Id.)

### B.   History and Characteristics of Defendant

Defendant's history and characteristics offer some mitigating factors and aggravating factors that support the government's recommended 15-month custodial sentence rather than a longer or shorter term.  Defendant lost his mother in 2016, and while he appears to have had a close relationship with his father, defendant was also exposed to angry outbursts at a young age, as further detailed in the PSR.  (PSR ¶¶ 95-98.)  Defendant has also developed a growing interest in firearms and dangerous weapons over the years, which would not independently be cause for concern but for his choice of words with respect to the instant crimes, during which he expressly threatened to shoot and kill his victims.  (Plea Agreement ¶ 13 ("You're gonna get shot and killed.  Do you understand that?") (emphasis added).)

Although defendant quickly accepted responsibility once charges were brought in the federal case, his conduct went unresolved for many months because of the lengths he took to conceal his identity from law enforcement.  He used a specialized Internet application that would not reveal his true phone number and he did not leave his name or contact information in any of the calls.  (Plea Agreement ¶ 13.)  This made identifying defendant particularly challenging; indeed, at the time he made the Planned Parenthood calls in June 2022, his threats against CAPS in February 2022 were still unsolved.

Additionally, defendant's conduct pending his change of plea hearing reflected a lack of appreciation for the seriousness of the

13

offense. The weekend before his change of plea hearing, Pretrial Services determined that defendant was conducting concerning Internet searches. (Dkt. 33 (Pretrial Violation Report).) Specifically, defendant had conducted searches regarding black powder pistols, a "polymer 80 frame," and airsoft guns designed to look like real firearms, including on websites where such items could be purchased and shipped. (Id.) Defendant also appeared to be researching what weapons he could legally possess as a convicted felon. (Id.) Defendant's persistent interest in firearms and other dangerous weapons, notwithstanding charges stemming from his threats related to using firearms and other dangerous weapons, as well as bond conditions prohibiting him from possessing either, suggested he had not yet internalized the severity of his threats or the impact his behavior has had on his victims.

Defendant's criminal history is not significant, but it is also not non-existent either. Defendant has three prior misdemeanor convictions, including most recently in 2018 a hit and run with property damage and providing an unlawful registration. (PSR ¶¶ 76-78.) These considerations are reflected in the government's recommendation of a sentence at the mid-point of his Guidelines range and do not outweigh the serious aggravating circumstances that support the imposition of a Guidelines sentence in this case.

**C.   Need for Deterrence and to Promote Respect for the Law**

Defendant's conduct reflects a troubled individual engaged in an escalating pattern of threatening behavior that must be deterred from taking similar action in the future, and from taking even more violent action in the future. There is also a substantial need to deter the general public from targeting non-profits, including a

14

women's health clinic, based on a distorted view of the services they provide.

The government's recommended sentence will give defendant sufficient time to reconsider his actions in light of their substantial consequences. And a maximum term of three years of supervised release with conditions preventing him from going near CAPS, Planned Parenthood, or other abortion providers would help hold defendant accountable for his future actions and deter him from committing future crimes. The government would also recommend the imposition of anger management courses.

## V.    CONCLUSION

For the foregoing reasons, a sentence of 15 months' imprisonment to be followed by a three-year term of supervised release, would be sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).